# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JOHN REGELMAN, | ) | |
| | ) | Civil Action No. 10 - 675 |
| Plaintiff, | ) | |
| | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| v. | ) | |
| | ) | ECF No. 91 |
| KAREN WEBER, Probation Officer, | ) | |
| Allegheny County Adult Probation | ) | |
| (Downtown), | ) | |
| Defendant. | | |

## <u>OPINION</u>

<u>LENIHAN</u>, M.J.

Plaintiff, John Regelman, is an inmate in the custody of the Pennsylvania Department of Corrections currently incarcerated at the State Correctional Institution in Houtzdale, Pennsylvania. He initiated this matter on May 17, 2010, by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 against the following Defendants: Karen Weber, Probation Officer, Allegheny County Adult Probation; Judge Mariani; Allegheny County Jail ("ACJ") (collectively, the "Allegheny County Defendants"); and Allegheny Correctional Health Services ("ACHS"). Judge Mariani was terminated from the case on August 9, 2010. Plaintiff filed an original complaint (ECF No. 9), and Amended Complaint (ECF No. 12), a Supplemental Complaint (ECF No. 13) and another Amended Complaint (ECF No. 14).

Motions to Dismiss were filed by the Allegheny County Defendants (ECF No. 28) and Defendant ACHS (ECF No. 30). By order dated March 21, 2011, the motions were granted except as to Plaintiff's claims against Karen Weber in her individual capacity (ECF No. 66). The

remaining claims in this action against Defendant Karen Weber derive from Plaintiff's confinement in the Allegheny County Jail on three separate occasions, allegedly as a result of his false arrest and imprisonment based on Defendant Weber's issuance of bench warrants and/or probation detainers when she should have known that Plaintiff was not on probation during the relevant time periods.[1]

Following discovery, Defendant Karen Weber filed a Motion for Summary Judgment (ECF No. 91) and supporting exhibits (ECF Nos. 91-1 & 91-2), along with a Brief in support thereof (ECF No. 92), and a Concise Statement of Material Facts (ECF No. 93). Plaintiff filed response in opposition to summary judgment entitled, "Objections to Granting Summary Judgment to Defendants" (ECF No. 96) ("Pl.'s Obj. to Summ. J.") with supporting documents (ECF Nos. 96-1, 96-2 & 96-3).[2] Defendant Weber's motion is now ripe for review.

## I.    LEGAL STANDARD – SUMMARY JUDGMENT

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at

---

[1] Plaintiff also asserted an Eighth Amendment claim in his Amended Complaint against Defendant Weber. Plaintiff asserted the same claim against Defendants ACJ and ACHS, which this Court dismissed with prejudice in a Memorandum Order dated March 21, 2011. *See* ECF No. 66. Because his Eighth Amendment claim against Weber is based on the same facts and legal theory as those advanced against ACJ and ACHS, Plaintiff's Eighth Amendment claim against Weber fails for the same reasons as those set forth in the 3/21/11 Memorandum Order at ECF No. 66.

[2] In the Court's Order requiring Plaintiff to respond to the Summary Judgment Motion he is clearly instructed that, in addition to a response and brief, he was also to file a separate concise statement, responding to each paragraph in the moving party's concise statement (ECF No. 94). Plaintiff filed what he titled Objections to Granting Summary Judgment to Defendants, with a number of documents attached (ECF No. 96) but did not file any response to the Defendant's concise Statement of Material Facts..

trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence, or the lack thereof, which demonstrates the absence of a genuine issue of material fact. *Nat'l State Bank v. Fed. Reserve Bank of New York*, 979 F.2d 1579, 1581-82 (3d Cir. 1992) (citing *Celotex,* 477 U.S. at 323-25). Once that burden has been met, the nonmoving party may not rest on the allegations in the complaint, but must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324 (quoting FED. R. CIV. P. 56(e) (1963). *See also Orsatti v. New Jersey State Police,* 71 F.3d 480, 484 (3d Cir. 1995) ("plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case.") (citing *Celotex,* 477 U.S. at 322).

An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. *See* FED. R. CIV. P. 56(c)(2); *Celotex*, 477 U.S. at 324; *J.F. Feeser, Inc., v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990).

The same summary judgment standards apply to a *pro se* plaintiff. *Williams v. Lane,* Civ. A. No. 01-03396, 2007 WL 756731, *3 (E.D.Pa. Mar. 8, 2007) (citing *Agogbua v. Abington Mem'l Hosp.*, No. 03-6897, 2005 WL 1353612, at *3 (E.D.Pa. May 31, 2005); *Tunnell v. Wiley*, 514 F.2d 971, 976 (3d Cir.1975)). Although the courts have liberally construed *pro se* complaints, they have still required *pro se* plaintiffs to set forth facts sufficient to survive summary judgment. *Williams,* 2007 WL 756731, at *3 (citing *Ezeiruaku v. United States*, No.

00-2225, 2000 WL 1751077, at *3 (E.D.Pa. Nov.29, 2000) (citing *Shabazz v. Odum*, 591 F.Supp. 1513, 1515 (M.D.Pa.1984))).[3] The court of appeals has also recognized that while an inmate who is proceeding *pro se* has a more difficult time generating record evidence in opposing summary judgment, the inmate may nonetheless meet his burden at the summary judgment phase with supporting affidavits. *Smith v. Mensinger,* 293 F.3d 641, 649 n. 4 (3d Cir. 2002) (citing *Brooks v. Kyler,* 204 F.3d 102, 108 n. 7 (3d Cir. 2000) (quoting *Norman v. Taylor,* 25 F.3d 1259, 1265 (4th Cir. 1994) (Hall, J., dissenting))). Thus, where a *pro se* litigant is given every opportunity to functionally respond in some meaningful way to a summary judgment motion and fails to do so, a movant who has met his burden of proof shall be entitled to summary judgment in his favor. *Williams,* 2007 WL 756731, at *3 (citations omitted); *Tunnell*, 514 F.2d at 976 (3d Cir.1975) (citations omitted).

## II.    FACTUAL BACKGROUND

On September 25, 2007, Plaintiff pleaded guilty to Receiving Stolen Property in the criminal case docketed at CP-02-CR-0013610-2007 (the "2007 Case") in the Court of Common Pleas of Allegheny County ("state court"). Judge Anthony Mariani sentenced Plaintiff to one year probation and imposed additional conditions of drug and alcohol evaluation and restitution. (Ex. A to Weber Aff., ECF No. 91-2 at 7.) On May 15, 2008, Defendant Weber filed a *Gagnon I*[4] Probation Violation Report with the state court, citing Plaintiff as a technical violator of his

---

[3] Traditionally, the court of appeals has given *pro se* litigants greater leeway with regard to technical rules of pleading and procedure, *Tabron v. Grace,* 6 F.3d 147, 153 n. 2 (3d Cir. 1993), holding them to a less exacting standard than trained counsel, *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972), given the "'understandable difference in legal sophistication.'" *Williams,* 2007 WL 756731, at *3.

[4] A *Gagnon* hearing refers to the hearing required when a convicted individual is accused of violating the terms of his probation, as articulated by the Supreme Court in *Gagnon v. Scarpelli,* 411 U.S. 778, 781-81 (1973).

probation for failure to report, failure to pay restitution, and failure to comply with the special order pertaining to the additional conditions of drug and alcohol evaluation. (Ex. B to Weber Aff., ECF No. 91-2 at 8-9.) Thereafter, Plaintiff was ordered to appear at a *Gagnon I* violation hearing before a court agent, a probation office hearing officer, on August 12, 2008; however, the Notice to Appear was returned to the court as undeliverable. (Weber Aff. at ¶¶2(c) & (d), ECF No. 91-2 at 3.) Defendant Weber asserts that, as a result, she was instructed by the court to file the appropriate paperwork for a warrant to be issued for Plaintiff's arrest. (*Id.* at ¶2(e), ECF No. 91-2 at 3-4.) Accordingly, a bench warrant for Plaintiff's arrest was issued by the state court judge on December 3, 2008. (Weber Aff. at ¶2(f), ECF No. 91-2 at 4; Ex. C to Weber Aff., ECF No. 91-2 at 10.)

In the meantime, on July 14, 2008, counsel for Plaintiff in the 2007 Case filed a Petition to Terminate Costs (Restitution). (Pl.'s App. Ex. B at 55-56, ECF No. 96-3 at 56-57.) The petition was granted on October 24, 2008. (Pl.'s App. Ex. B at 59, ECF No. 96-3 at 60.) The state court judge's order on October 24, 2008 did not, however, close interest in the 2007 Case, nor was there any evidence of an order closing interest or a motion requesting same in the court records, according to the Allegheny County Public Defender's Office. (Pl.'s App. Ex. A, ECF No. 96-1.)

Subsequently, Plaintiff remained an absconder until the bench warrant issued on December 3, 2008 was cleared and he was arrested on new attributable charges on June 7, 2009,[5] in further violation of his probation on the 2007 Case. (Weber Aff. at ¶2(g), ECF No. 91-2 at 4.)

---

[5] In paragraph 2(f) of her affidavit, Weber states the date of Plaintiff's arrest as "June 7, 2008." This appears to be a typographical error, as all of the public court documents contained in the summary judgment record clearly indicate that the date of Plaintiff's arrest was June 7, 2009.

Specifically, Weber states that Plaintiff was arrested on a Failure to Appear warrant issued in the criminal case docketed at CP-02-CR-0017964-2008 (the "2008 Case") for charges of habitual offender, presenting false identification to law enforcement, and driving under a suspended license. (*Id.*; *see also* Criminal Docket/Entries at 5, *Commw. v. Regelman*, Case No. CP-02-CR-0017964-2008, *available at* http://ujsportal.pacourts.us/DocketSheets/CP.aspx.) Plaintiff was also detained on the probation violation warrant issued in the 2007 Case and a detainer was lodged. (Weber Aff. at ¶2(g), and Ex. C & D thereto, ECF No. 91-2 at 4, 10-12.) A *Gagnon I* hearing was held on June 18, 2009 to address the probation violations, at which time the hearing officer lifted the detainer and Plaintiff was released. (Weber Aff. at ¶2(h) & Ex. E attached thereto, ECF No. 91-2 at 4 & 13.)

Plaintiff was also incarcerated from October 28, 2009 to November 18, 2009. Defendant Weber states that she received notification from the Allegheny County Jail on October 29, 2009 that Plaintiff had been arrested on a bench warrant for failure to appear at a court hearing in Case No. CP-02-CR-0017964-2008 (the "2008 Case"), on charges of habitual offender, presenting false identification to law enforcement, and driving with a suspended license. (Weber Aff. at ¶3(a) & Ex. F. thereto, ECF No. 91-2 at 4, 16.) After discussing the circumstances with her supervisor, Weber states that she issued a detainer on October 30, 2009 based on the attributable charges in the 2008 Case which had not yet been adjudicated, along with probation rule issues, thereby changing Plaintiff's probation status in the 2007 Case from a technical violator to a potential convicted violator. (Weber Aff. at ¶¶3(b) & 4(g), & Ex. G thereto, ECF No. 91-2 at 4-6, 17.)

On November 14, 2009, Plaintiff submitted a request to the Clerk of Courts/Department of Court Records (on a form entitled, "Inmate's Request to Staff Member") inquiring as to

whether the Public Defender's Office filed a motion to close out his probation with Judge Mariani in the 2007 Case.  (Pl.'s App. Ex. B at 3, ECF No. 96-3.)  Plaintiff further stated in his request that he "may be being detained without just cause" as he believed his 2007 Case was closed out.  (*Id.*)  Thereafter, the Criminal Docket in the 2007 Case reflects that on November 17, 2009, Plaintiff filed a Motion to Lift the Detainer that had been lodged by Defendant Weber on October 30, 2009.  (Crim. Docket/Entries at 5, *Commw. v. Regelman,* CP-02-CR-0013610-2007, *available at* http://ujsportal.pacourts.us/DocketSheets/CP.aspx.)

According to Defendant Weber, a hearing was held before Judge Mariani on November 18, 2009, on Plaintiff's motion to lift the detainer.  (Weber Aff. at ¶3(c), ECF No. 91-2 at 5.)  At the hearing, Judge Mariani lifted the detainer and Plaintiff was released on November 18, 2009.  (*Id.*; Ex. F, G & H attached to Weber Aff., ECF No. 91-2 at 14-18.)  However, Plaintiff disputes that this hearing took place.  (Pl.'s Objections to Granting Summ. J. to Defendants, ECF No. 96 at 2.)

The third and last period of incarceration at issue in this lawsuit began on November 28, 2009,[6] and ended on January 28, 2010.  Plaintiff was arrested on November 28, 2009 on new charges of Burglary, Theft by Unlawful Taking, Criminal Trespass and Prowling in Case No. CP-02-CR-0010323-2009 (the "2009 Case").  (Weber Aff. at ¶4(a) & Ex. I attached thereto, ECF No. 91-2 at 5, 19-21.)  At that time, there was no active probation violation warrant issued through any of Defendant Weber's cases.  (*Id.*)  However, as of November 29, 2009, the charges of habitual offender, presenting false identification to law enforcement, and driving with a suspended license in the 2008 Case were still unadjudicated, and were attributable to the original

---

[6] Defendant Weber states in her affidavit that Plaintiff was incarcerated on November 29, 2009, however, the record evidence clearly shows that the first day of Plaintiff's third period of incarceration was November 28, 2009.

probation imposed by Judge Mariani in the 2007 Case. (Weber Aff. at ¶4(f), ECF No. 91-2 at 6.) On November 30, 2009, Defendant Weber notified the state court judge that Plaintiff had been arrested on new charges in the 2009 Case and requested guidance as to how to proceed.[7] (Weber Aff. at ¶4(c), ECF No. 91-2 at 5-6.) According to Defendant Weber, in December 2009, the state court judge instructed her to file the appropriate paperwork for the court to issue a bench warrant for a probation violation. (Weber Aff. at ¶4(d), ECF No. 91-2 at 6.)

Thereafter, the state court judge issued a bench warrant on December 2, 2009 in the 2007 Case for a probation violation, based on the attributable unadjudicated charges in the 2008 Case. (Weber Aff. at 4(d) & Ex. J thereto, ECF No. 91-2 at 6 & 22; Pl.'s App. Ex. B at 15, ECF No. 96-3 at 16.) Since Plaintiff was already in custody from his arrest on the new charges in the 2009 Case, a detainer was lodged against him on December 16, 2009, based on the bench warrant issued on December 2, 2009 in the 2007 Case. (Ex. K attached to Weber Aff., ECF No. 91-2 at 23.) On December 21, 2009, Plaintiff submitted a request to the Clerk of Courts (again on an Inmate Request form) asking why he was being detained on a probation violation in the 2007 Case when that case had been closed out. (Pl.'s App. Ex. B at 16, ECF No. 96-3 at 17.) Plaintiff further requested that Judge Mariani (the sentencing judge in the 2007 Case) be notified that the detainer should be lifted and he should be released. (*Id.*)

---

[7] Defendant Weber explained the basis for requesting guidance from the state court judge :
> Although it appears that the probation case chronologically expired, the probation still had to be ruled upon by the Court, for if the defendant commits a new offense during a period of probation, that probation does not end at the chronological expiration date. The new attributable offense must be adjudicated and then a Gagnon II hearing is held before the original sentencing Judge. The Judge then determines the action to be taken on the violation of probation, forgive[ne]ss or a new sentence; which includes the case to be closed, no action to be taken on the probation violation, or revocation and a new sentence and/or a new period of probation/and or incarceration.

Weber Aff. at ¶4(b), ECF No. 91-2 at 5.

The criminal docket in the 2007 Case reflects that a motion to lift the detainer was filed by Plaintiff on December 23, 2009. (Crim. Docket/Entries at 5, *Commw. v. Regelman,* CP-02-CR-0013610-2007, *available at* http://ujsportal.pacourts.us/DocketSheets/CP.aspx.) The court records further show that the detainer was cleared on December 23, 2009.[8] (Ex. K attached to Weber Aff., ECF No. 91-2 at 23.) Plaintiff was not released, however, until January 28, 2010, when he made bail on the new charges in the 2009 Case. (*Id.*)

## III. DISCUSSION

Plaintiff alleges that he was falsely arrested and imprisoned in the Allegheny County Jail on three separate occasions because Defendant Weber caused to be issued bench warrants and/or probation detainers when she should have known that Plaintiff was not on probation during the relevant time periods. In addition, Plaintiff submits that he did not receive the required *Gagnon I & II* hearings for the second and third periods of incarceration, and did not receive a *Gagnon II* hearing for the first period of incarceration.

Defendant Weber advances four arguments in support of summary judgment in her favor: (1) Plaintiff's incarceration did not violate the Fourteenth Amendment; (2) She is entitled to qualified immunity; (3) the Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine; and (4) Plaintiff's Amended Complaint is barred by judicial estoppel. The Court will consider each of these arguments in turn.

### A. The Rooker-Feldman Doctrine

The Court turns first to Weber's argument that this action is barred by the *Rooker-Feldman* doctrine, since it challenges this Court's subject matter jurisdiction. The *Rooker-*

---

[8] On December 14, 2009, Plaintiff entered a guilty plea and was sentenced to 18 months of probation on the charges in the 2008 Case. (Crim. Docket/Entries at 5, *Commw. v. Regelman,* CP-02-CR-0017964-2008, *available at* http://ujsportal.pacourts.us/DocketSheets/CP.aspx.

*Feldman* doctrine is a judicially-created doctrine that bars lower federal courts from reviewing certain state court actions. The doctrine originated from two Supreme Court opinions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)*, and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Specifically, the *Rooker-Feldman* doctrine holds that a United States District Court has no subject matter jurisdiction to review final judgments of a state court, because only the Supreme Court has jurisdiction to review state court judgments under 28 U.S.C. § 1257. *Feldman*, 460 U.S. at 482.[9] "The Rooker-Feldman doctrine is based on the statutory foundation of 28 U.S.C. § 1257 and the well-settled understanding that the Supreme Court of the United States, and not the lower federal courts, has jurisdiction to review a state court decision." *Parkview Assocs. P'ship v. City of Lebanon*, 225 F.3d 321, 324 (3d Cir.2000); *see also Gulla v. North Strabane Twp*., 146 F.3d 168, 171 (3d Cir.1998). This doctrine applies even where the challenges to the state court judgment allege that the state court's action was unconstitutional, such as a deprivation of due process and equal protection rights. *Feldman,* 460 U.S. at 485-86 (citation omitted).

In *Exxon Mobil Corp. v. Saudi Basic Industries Corporation*, the Supreme Court emphasized the narrowness of the doctrine and held that *Rooker-Feldman* is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejections of those judgments." 544 U.S. 280, 284 (2005); *see also Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d

---

[9]Habeas corpus petitions are an exception to the jurisdictional bar of *Rooker-Feldman*. *See Walker v. Horn,* 385 F.3d 321, 329 n. 22 (3d Cir. 2004) (citations omitted).

542, 544 (3d Cir.2006) (citing *Exxon Mobil, id.*).[10] The Court in *Exxon Mobile* further clarified that just because a federal claim was previously adjudicated in state court does not trigger the application of *Rooker-Feldman.* Thus, the court must determine if the plaintiff in the federal lawsuit has presented "some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." *Exxon Mobil,* 544 U.S. at 293 (citations omitted). If the court finds that an independent claim has been presented, then jurisdiction exists and state law controls whether the defendant prevails on preclusion principles. *Id.* As the Court pointed out, "[p]reclusion, of course, is not a jurisdictional matter." *Id.* (citing FED. R. CIV. P. 8(c)).

Recently, the United States Court of Appeals for the Third Circuit established the following test, based on the Supreme Court's holding in *Exxon Mobil*:

> [T]here are four requirements that must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments"; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 166 (3d Cir. 2010) (quoting *Exxon Mobil,* 544 U.S. at 284). In doing so, the court of appeals cautioned that its pre-*Exxon* formulation of the *Rooker-Feldman* doctrine, which focused on whether the state and federal lawsuits were "inextricably intertwined," should not be relied upon, as it is clear after *Exxon* that "[t]he phrase 'inextricably intertwined' does not create an additional legal test or expand the scope of *Rooker-Feldman* beyond challenges to state-court judgments." *Id.* at 170.

---

[10]The *Rooker-Feldman* doctrine applies to final decisions of lower state courts. *Walker,* 385 F.3d at 329 (citation omitted).

Rather, "[t]he purpose of the [phrase had been] to highlight that a challenge to a judgment is barred even if the claim forming the basis of the challenge was not raised in the state proceedings." *Id.* (alteration to original) (citing *Bolden v. City of Topeka, Kan.,* 441 F.3d 1129, 1141 (10th Cir. 2006)). Hence, the court of appeals opined that the phrase has no independent contact and thus is no more than "a descriptive label attached to claims that meet the requirements outlined in *Exxon Mobil*.'" *Id.* (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 87) (2d Cir. 2005)) (footnote omitted).

Defendant Weber submits that under *Rooker-Feldman,* this Court lacks subject matter jurisdiction to evaluate constitutional claims that are inextricably intertwined with a state court's judicial proceedings. Weber reasons that because Plaintiff appears to be asking this Court to review the state court proceedings which resulted in his detainment, Plaintiff's constitutional claims are inextricably intertwined with the state court proceedings, and therefore, this Court lacks subject matter jurisdiction under *Rooker-Feldman*. Plaintiff has not responded to this argument in his Objections to Summary Judgment. Nonetheless, the Court finds that Defendant Weber's *Rooker-Feldman* argument lacks merit.

*Rooker-Feldman* simply has no application to the case at bar, as Weber has failed to establish any of the prongs of the test. First and foremost, Weber has failed to point to a final *judgment* of the court of common pleas. Nor can she. Contrary to Weber's argument—that Plaintiff is asking this Court to review his state court proceedings which resulted in his detainment—it is clear that Plaintiff is not challenging his guilty plea or the sentence imposed in the 2007 Case. Rather, Plaintiff contends that he was denied due process when he was falsely arrested and detained for probation violations in his 2007 Case. Plaintiff admits, and the record clearly shows, that no *Gagnon II* hearing was held, nor was a final decision issued on the

probation violation in the 2007 Case. Even Defendant Weber appears to realize the fallacy of her argument because she does not refer to the probation matter as final judgment or decision, but instead refers to it as "proceedings." Accordingly, because Defendant Weber has failed to establish the requisite element of a final state court judgment, *Rooker-Feldman* does not apply to Plaintiff's claims against her.

### B.    Section 1983 Claim

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim for relief under this provision, a plaintiff must demonstrate that the conduct in the complaint was committed by a person or entity acting under color of state law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States. *Piecknick v. Commw. of Pa.*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (citing *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979); *Mark v. Borough of Hatboro,* 51 F.3d 1137, 1141 (3d Cir. 1995)).

Here, there is no question that Weber was acting under color of state law at the time of the relevant events. Thus, the viability of Plaintiff's Section 1983 claim is dependent upon his establishment of the second requirement—the deprivation of a constitutional right.

### 1.      False Arrest Claim

Plaintiff claims that he was falsely arrested on three separate occasions in 2009 based on the actions of Defendant Weber as described above.  It is well settled that an arrest without probable cause is a Fourth Amendment violation actionable under Section 1983.[11]  *See Patzig v. O'Neil*, 577 F.2d 841, 848 (3d Cir. 1978) (citing *Sartin v. Comm'r of Public Safety,* 535 F.2d 430 (8th Cir. 1976); *Street v. Surdyka,* 492 F.2d 368 (4th Cir. 1974)).  *See also Albright v. Oliver*, 510 U.S. 266, 274 (1995) (a section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures).[12]  To state a Fourth Amendment claim for false arrest, a plaintiff must allege two elements: (1) that there was an arrest; and (2) that the arrest was made without probable cause.  *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988).  The proper inquiry when a claim of false arrest is asserted in a Section 1983 action is "whether the arresting officers had probable cause to believe the person arrested had committed the offense[,]" and "not whether the person arrested in fact committed the offense." *Id.* (citations omitted).  "Probable cause . . . requires more than mere suspicion; however, it does not require that the officer have evidence to prove guilt beyond a reasonable doubt."  *Orsatti,* 71

---

[11] Here, Plaintiff fails to specify whether his false arrest claim against Defendant Weber is brought under the Fourth Amendment or Pennsylvania state tort law.  The Court will analyze Plaintiff's false arrest claim under the Fourth Amendment, but the analysis applies equally to the state common law claim, to the extent Plaintiff is asserting such claim. *Watson v. Haverford Twp. Police Dep't,* Civ. A. No. 10-6731, 2012 WL 1900629, *17 (E.D.Pa. May 25, 2012) ("'Pennsylvania state law false arrest claims and federal constitutional false arrest claims are co-extensive as to both elements of proof and elements of damages.'") (quoting *Russoli v. Salisbury Twp.,* 126 F.Supp. 2d 821, 869 (E.D.PA. 2000)).

[12] The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

F.3d at 482-83. "Rather, probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Id.* (citations omitted); *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975) (quoting *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964)).

Plaintiff alleges that his arrests/detention were without probable cause because Defendant Weber knew or should have known that his 2007 Case was closed out and he was not on probation after October 27, 2008, as confirmed by "Court Records." (Pl.'s Obj. to Granting Summ. J., ECF No. 96 at 3-4.) Therefore, Plaintiff submits that he could not have violated his probation sentence in that case. Plaintiff's claim is predicated on the mistaken belief that his 2007 Case was closed out at the time of his detentions in 2009. However, the undisputed evidence of record shows otherwise.

Plaintiff was sentenced to one year probation on September 25, 2007 in the 2007 Case. While serving his probation, on June 26, 2008, Plaintiff committed new offenses of habitual offender, presenting false identification to law enforcement, and driving under a suspended license. Consequently, these new attributable charges made him a violator of his probation in the 2007 Case. Thus, even though the probation period ended on September 25, 2008, Plaintiff could be charged with a probation violation after that date based on violations occurring before the expiration of his probation. In addition, Plaintiff's own evidence shows that the 2007 Case was not closed out by the Order dated October 24, 2008. *See* Pl.'s App. Ex. A, ECF No. 96-1, and Ex. B at 59, ECF No. 96-3 at 60.

The undisputed evidence of record also shows that Defendant Weber had probable cause to have the bench warrants issued and/or detainers lodged for the periods of confinement at issue.

With regard to the first period of confinement, Defendant Weber authorized a warrant be issued for Plaintiff's arrest on December 3, 2008 based on the May 15, 2008 *Gagnon I* Probation Violation Report (the "Report") and Plaintiff's failure to appear at the violation hearing scheduled for August 12, 2008 in the 2007 Case. The Report cited plaintiff as a technical violator of his probation for failure to report, failure to pay restitution, and failure to comply with the additional condition of undergoing drug and alcohol evaluation. Although Plaintiff was arrested on June 7, 2009 on new charges in the 2008 Case, a detainer was lodged against him based on the bench warrant issued for the probation violation in the 2007 Case. Based on these undisputed facts, the Court concludes that a reasonable jury could not find that the information available was not sufficient to warrant a reasonable probation officer in believing that Plaintiff had violated his probation. Therefore, probable cause existed for the arrest and detention of Plaintiff from June 7, 2009 through June 18, 2009.

As to the second period of confinement, Plaintiff was arrested on a bench warrant issued for failure to appear at a hearing on new charges in the 2008 Case. Defendant Weber was not involved in the issuance of that bench warrant. However, she was notified of Plaintiff's arrest and on October 30, 2009 issued a detainer based on the attributable charges in the 2008 Case which had not yet been adjudicated and probation rule issues, thereby changing Plaintiff's probation status in the 2007 Case from technical violator to a potential convicted violator. Based on these undisputed facts, the Court concludes that a reasonable jury could not find that the information available was not sufficient to warrant a reasonable probation officer in believing that the Plaintiff had violated his probation. Therefore, probable cause existed for Plaintiff's detention from October 30, 2009 to November 18, 2009.

Finally, as to the third period of confinement, Plaintiff was arrested on November 28, 2009 on new charges brought in the 2009 Case. The undisputed evidence shows that Defendant Weber did not issue or cause to be issued any warrant for Plaintiff's arrest on these new charges. Nor was Defendant Weber responsible for Plaintiff's continued incarceration through January 28, 2010. Both the arrest and confinement were based on new charges in the 2009 Case. Defendant Weber did cause a detainer to be lodged against Plaintiff based on the bench warrant issued by the state court judge on December 2, 2009 for a probation violation stemming from the unadjudicated attributable charges in the 2008 Case. However, the detainer was cleared on December 23, 2009 and Plaintiff remained in custody on the new charges in the 2009 Case until January 28, 2010 when he made bail. Thus, Plaintiff's false arrest claim as to the third period of confinement fails as a matter of law because Plaintiff was not arrested and incarcerated on the bench warrant issued on December 2, 2009 for the probation violation, and the detainer lodged and subsequently cleared was not the reason for his continued incarceration. *Israel v. Superintendent of S.C.I. Fayette,* Civ. A. No. 08-428, 2009 WL 693248, *13 n. 8 (W.D.Pa. Mar. 13, 2009) ("because Plaintiff was already a convicted prisoner serving a sentence at the time of the arrest, he can not make out a claim of false arrest and/or false imprisonment as a matter of law.") (citing *Parker v. City of New York*, No. 05 Civ. 1803, 2008 WL 110904, at *9 (S.D.N.Y., Jan. 7, 2008) ("A plaintiff does not have a claim for false arrest ... under section 1983 if, at the time of his arrest and prosecution, he is already in custody on other charges, because there is no deprivation of liberty interests."); *McCabe v. City of Philadelphia*, No. Civ.A. 01–CV–3975, 2002 WL 32341787, at *4 (E.D.Pa. Nov.13, 2002) ("A plaintiff cannot state a claim for false arrest when he is already in custody."), *aff'd*, 76 F. App'x 464 (3d Cir.2003); *Goncalves v. Reynolds*, 198 F.Supp.2d 278, 283 (W.D.N.Y.2001) ("noting that plaintiff could not state a claim

17

for false arrest because, at the time of his arrest, he was already detained pursuant to earlier charges and based upon his prior convictions").

Accordingly, because no genuine issues of material fact exist as to Plaintiff's claim of false arrest against Defendant Weber, she is entitled to summary judgment on that claim.

### 2. Fourteenth Amendment

The Fourteenth Amendment guarantees, *inter alia,* that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1. Plaintiff contends that Weber violated his due process rights under the Fourteenth Amendment in several respects. He asserts that he was deprived of his freedom, liberties, and due process when he was falsely imprisoned for alleged probation violations on three separate occasions in 2009 totalling 95 days, because he was neither a violator of probation nor on probation at the time he was placed in Allegheny County Jail for such violations. In addition, Plaintiff contends that he did not receive the *Gagnon I & II* hearings as mandated by Pennsylvania law, thus violating his due process rights. Finally, Plaintiff contends that Weber harassed him causing him mental and emotional distress when she continuously placed him in confinement for alleged probation violations in violation of the Fourteenth Amendment.

### a. False Imprisonment

As to Plaintiff's claim of false imprisonment, Defendant Weber argues that the detention of Plaintiff was not arbitrary and does not "shock the conscience," and therefore, she is entitled to summary judgment on Plaintiff's false imprisonment claim under the Fourteenth Amendment. In support, Weber relies on *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1988), for the proposition that the Fourteenth Amendment protects an individual from arbitrary government action when the conduct "shocks the conscience." Weber submits that Plaintiff has presented no

evidence that the arrests initiating his detainment on three separate occasions in 2009 were based upon unreasonable beliefs that were insufficient to support his detainment. In this regard, Weber submits that the record shows that Plaintiff's detentions were initiated for repeated probation violations, failures to appear at court hearings, and charges of theft, burglary, and trespass. Defendant Weber further submits that all of the Plaintiff's detentions were pursuant to a valid warrant issued either by or through a judge or hearing officer. Based on this evidence, Defendant Weber maintains that Plaintiff has failed to demonstrate that his incarcerations were arbitrary or shocked the conscience.

In response, Plaintiff submits that his claim of false arrest and imprisonment has been confirmed by court records showing he was not on probation after October 27, 2008. Plaintiff further submits that his three arrests and incarcerations in 2009 violated his constitutional rights because he was never brought before a judge for the alleged probation violations in 2009. (Pl.'s Obj. to Granting Summ. J., ECF No. 96 at 3-4.) In support of his argument, Plaintiff relies on "Court Records" attached to his response at ECF Nos. 96-1, 96-2 and 96-3.

The Court agrees with Defendant Weber. A false imprisonment claim[13] brought pursuant to Section 1983 is predicated upon the Fourteenth Amendment's protection from deprivations of liberty without due process of law. *Groman v. Twp. of Manalapan,* 47 F.3d 628, 636 (3d Cir.

---

[13] A plaintiff bringing a false imprisonment claim under Pennsylvania state law, must prove that: (1) the defendant acted with the intent to confine the plaintiff within fixed boundaries; (2) the defendant's act directly or indirectly resulted in confinement of the plaintiff; (3) the plaintiff was conscious of the confinement or harmed by it; and (4) the confinement was unlawful. *Joyner v. Sch. Dist. of Phila.*, 313 F. Supp. 2d 495, 502 (E.D. Pa. 2004) (footnotes omitted); *Pennoyer v. Marriott Hotel Servs., Inc.,* 324 F. Supp. 2d 614, 620 (E.D. Pa. 2004) (citations omitted). A confinement is unlawful if the defendant did not have probable cause to confine the plaintiff. *Joyner*, 313 F. Supp. 2d at 502 (footnote omitted).

1995)(citing *Baker,* 443 U.S. at 142). Judge McLaughlin has aptly summarized the law applied in this Circuit in analyzing a substantive due process claim:

> The constitutional right to "substantive due process" protects individuals against arbitrary governmental action, regardless of the fairness of the procedures used to implement them. *Foucha v. Louisiana*, 504 U.S. 71, 80 (1990). *See also Daniels v. Williams*, 474 U.S. 327, 329–33 (1986); *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government."). The Supreme Court has declined to set forth a precise rule that defines the exact scope of impermissible "arbitrary" conduct for purposes of applying the substantive component of the Due Process Clause. *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (clarifying that governmental conduct does not violate a person's substantive due process rights unless it amounts to an abuse of official power that "shocks the conscience."). . . . The Third Circuit has explained that "the relevant level of arbitrariness required in order to find a substantive due process violation involves not merely action that is unreasonable, but, rather, something more egregious, which we have termed at times 'conscience shocking' or 'deliberate indifference.'" *Hunterson v. DiSabato*, 308 F.3d 236, 246–47 (3d Cir.2002).

*Curley v. McVey,* Civ. A. No. 07-145E, 2009 WL 589809, *7-*8 (W.D.Pa. Mar. 9, 2009). Thus, in order for a plaintiff to establish a substantive due process violation, he must demonstrate that the government official's conduct "shocks the conscience." *Schultz v. Hughesville Borough*, Civ. A. No. 4:10-cv-0262, 2011 WL 3273876, at *16 (M.D.Pa. July 29, 2011) (citing *County of Sacramento v. Lewis,* 523 U.S. 833, 846 (1988)) (other citations omitted).

The Supreme Court has clearly held that where the false imprisonment claim is predicated on an arrest that is found to have been made on probable cause, no due process violation for false imprisonment can be established. *Groman,* 47 F.3d at 636 (citing *Baker,* 443 U.S. at 143-44). On the other hand, where probable cause is found lacking for the arrest, the

arrestee has a claim for false imprisonment under Section 1983 based on a detention pursuant to that arrest. *Id.* (citing *Thomas v. Kippermann,* 846 F.2d 1009, 1011 (5th Cir. 1988)).

In the case at bar, this Court concluded above that probable cause existed for the issuance of the bench warrants and/or detainers for the first and second periods of confinement- as apparently also did the state court judges who issued them. As such, a reasonable jury could not find that Plaintiff's detention was arbitrary or shocked the conscience. As to the third period of confinement, this Court concluded that Plaintiff's arrest and incarceration was predicated solely on the new charges in the 2009 Case, and thus, no basis existed for imposing liability against Defendant Weber on Plaintiff's false arrest claim. Likewise, the same analysis applies to Plaintiff's claim of false imprisonment. Based on the record evidence, a reasonable jury could not find that Defendant Weber's actions directly or indirectly resulted in Plaintiff's confinement. Having failed to establish a required element of a claim for false imprisonment, Plaintiff cannot show that Defendant Weber's conduct with regard to the third period of confinement was arbitrary or shocks the conscience.

Accordingly, because no genuine issues of material fact exist as to Plaintiff's claim of false imprisonment against Defendant Weber, she is entitled to summary judgment on that claim.

**b.      Gagnon I & II Hearings**

In opposing summary judgment, Plaintiff argues that his three arrests and incarcerations in 2009 violated his constitutional rights because he was never brought before a judge on the alleged probation violations in 2009. (Pl.'s Obj. to Granting Summ. J., ECF No. 96  at 3-4.) Specifically, Plaintiff submits in his response to the summary judgment motion that except for the *Gagnon I* hearing that was held on June 18, 2009, no other violation hearings were held, and he never received a *Gagnon II* hearing before Judge Mariani. (*Id.*, ECF No. 96 at 2.)  Defendant

Weber has not addressed this issue.

The revocation of probation has been found to constitute a liberty interest to which due process must be accorded. *Gagnon*, 411 U.S. at 782 (footnotes omitted). Due process is a flexible concept; the means of providing a meaningful opportunity to be heard depend upon the particular circumstances of each situation. *Hewitt,* 459 U.S. at 472; *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex,* 442 U.S. 1, 12 (1979); *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972). The court of appeals has summarized the hearing requirements for persons accused of violating the terms of their probation, as articulated by the Supreme Court in *Gagnon v. Scarpelli*:

> In *Gagnon v. Scarpelli*, the Supreme Court held that a person accused of violating the terms of his probation was entitled to two hearings before revocation and re-sentencing. *See Gagnon v. Scarpelli*, 411 U.S. [at] 781–82 . . .. The first, a *Gagnon I* hearing, serves to determine whether there was probable cause for the probation revocation. *Gagnon*, 411 U.S. at 782. The second, a *Gagnon II* hearing, determines whether the person in fact violated the conditions of his or her probation and whether s/he should be incarcerated. *Commonwealth v. Sims*, 770 A.2d 346, 349 (Pa.Super.Ct.2001) (citing *Gagnon*, 411 U.S. at 784).

*Heilman v. T.W. Ponessa & Assoc.,* No. 08-1667, 2009 WL 82707, at *1 n. 1 (3d Cir. Jan. 14, 2009). To the extent Plaintiff may be asserting a procedural due process claim with regard to his contention that he was not afforded the required *Gagnon I* and *II* hearings for each of his three periods of confinement, his claim must fail.

First of all, Plaintiff is not entitled to a *Gagnon II* hearing for each of the periods of confinement. Rather, Plaintiff is entitled to a *Gagnon II* hearing on the sentence in his 2007 Case, and only if the probation officer recommends revocation of probation and incarceration. Moreover, the *Gagnon II* hearing could not have been held in the 2007 Case until the attributable

charges in the 2008 Case had been adjudicated. That did not occur until Plaintiff was sentenced in the 2008 Case on December 14, 2009. Thus, the *Gagnon II* hearing could not have occurred until after December 14, 2009. The criminal docket in the 2007 Case indicates that no action has been taken to revoke or modify Plaintiff's sentence of probation. Consequently, the need for a *Gagnon II* hearing simply has not been triggered.

As to the required *Gagnon I* hearings, the record evidence shows that with regard to the first period of confinement, Plaintiff received the required *Gagnon I* hearing on June 18, 2009 and was released. As to the second period of confinement, the evidence shows that Plaintiff received a hearing on November 18, 2009, pursuant to his motion to lift the detainer, and was released on that same date. *See* Ex. F, G & H, ECF Nos. 91-2 at 14-18; Weber Aff. at ¶3(c). Plaintiff disputes that this hearing took place; however, he has not pointed to any evidence in the record to support his position, nor has he provided an affidavit regarding same. Plaintiff cannot create a material issue of fact on an unsupported denial at the summary judgment stage. FED. R. CIV. P. 56(c)(1) & (e). Thus, a reasonable jury could not find that a triable issue of fact exists as to whether the November 18, 2009 hearing occurred.

Finally, as to the third period of confinement, Plaintiff was arrested and held on new charges in the 2009 Case. He was released when he made bail in the 2009 Case. Thus, Plaintiff's confinement was not based on a probation violation, but rather, was due to his arrest on new charges and a delay in his making bail in the 2009 Case. As such, Plaintiff was not entitled to a *Gagnon I* hearing. Nonetheless, Plaintiff filed a motion to lift the detainer lodged on December 16, 2009 for the probation violation and it was cleared on December 23, 2009.

Accordingly, the Court finds that Plaintiff received all the procedural due process to which he was entitled.

### 3.     Harassment Causing Mental/Emotion Distress

In his Amended Complaint, Plaintiff has asserted a Fourteenth Amendment violation based on "harassment" he allegedly endured from Defendant Weber's unlawful detention of him on three separate occasions in 2009, resulting in mental and emotional distress. Defendant Weber does not address this claim in her summary judgment motion, but the Court finds that as a matter of law, Plaintiff cannot state claim on which relief may be granted and, in any event, the Defendant has qualified immunity from monetary relief as to Plaintiff's Section 1983 claims. Therefore, the Court will dismiss the Section 1983 harassment claim pursuant to 28 U.S.C. §1915(e)(2).[14]

"'It is well established that allegations of threats or verbal harassment, without injury or damage, do not state a claim under 42 U.S.C. § 1983.'" *See Burkholder v. Newton*, 116 F. App'x 358, 360 (3d Cir. 2004) (quoting *Ramirez v. Holmes,* 921 F.Supp. 204, 210 (S.D.N.Y. 1996)) (other citations omitted); *Dewalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) ("'mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations'") (citation omitted); *Wilson v. Horn*, 971 F. Supp. 943, 948 (E.D. Pa. 1997) (verbal abuse and harassment, although not commendable, does not rise to the level of a constitutional violation), *aff'd*, 142 F.3d 430 (Table) (3d Cir. 1998). Moreover, "Section 1983 claims are based on constitutional violations and have a different threshold level than a simple tort action." *Burkholder,* 116 F. App'x at 360 (citation omitted).

---

[14] Section 1915 applies to proceedings filed by plaintiffs granted *in forma pauperis* status, and grants the court authority to "dismiss a case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted; or . . . seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. §1915(e)(2).

Plaintiff's Section 1983 harassment claim is predicated upon the same conduct that he alleges in support of his constitutional claims of false arrest and false imprisonment. However, this Court has found above that a reasonable jury could not return a verdict for Plaintiff on his claims of false arrest and false imprisonment against Defendant Weber. Therefore, Plaintiff's Section 1983 harassment claim fails as a matter of law, as it is predicated on the same conduct that this Court has found did not rise to the level of a constitutional violation. In addition, as explained below, Defendant Weber is entitled to qualified immunity from money damages on Plaintiff's Section 1983 claim. Accordingly, the Court will dismiss Plaintiff's Section 1983 harassment claim with prejudice pursuant to 28 U.S.C. §1915(e)(2).

**C. <u>Qualified Immunity</u>**

Defendant Weber also seeks summary judgment on the basis that she is entitled to qualified immunity from money damages on Plaintiff's Section 1983 claim. Plaintiff has failed to respond to this argument.

State officials performing discretionary acts enjoy "qualified immunity" from money damages in § 1983 causes of action when their conduct does not violate "clearly established" statutory or constitutional rights of which a "reasonable person" would have known at the time the incident occurred. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In *Saucier v. Katz*, 533 U.S. 194 (2001), the United States Supreme Court discussed the two-step qualified immunity inquiry. The Court directed that, in deciding whether a defendant is protected by qualified immunity, a court first must determine whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Id*. at 201. If the facts do not establish the violation of a constitutional right, no further inquiry concerning qualified immunity is necessary. *Id*. If the plaintiff's factual allegations do

show a violation of his rights, then the court must proceed to determine whether the right was "clearly established," that is, whether the contours of the right were already delineated with sufficient clarity to make a reasonable officer in the defendant's circumstances aware that what he was doing violated the right. *Id*. at 201-02. Recently, in *Pearson v. Callahan*, 555 U.S. 223 (2009), the United States Supreme Court concluded that while the two-step sequence identified in *Saucier* "is often appropriate, it should no longer be regarded as mandatory." *Id*. at 236.

In the case at bar, this Court has determined above that a reasonable jury could not find that Weber violated Plaintiff's constitutional rights, based on the undisputed evidence of record. Therefore, because Plaintiff has failed to show that Weber violated his constitutional rights, the Court finds that Weber is entitled to qualified immunity from money damages on Plaintiff's Section 1983 claim.

## IV.    CONCLUSION[15]

For the reasons set forth above, the Court finds that Defendant Karen Weber is entitled to summary judgment in her favor with respect to Plaintiff's claims against her in her individual capacity. An appropriate order will follow.

Dated: September 28, 2012                                    BY THE COURT:

_____
LISA PUPO LENIHAN
Chief United States Magistrate Judge


 cc:    John Regelman, *Pro Se*
         JY-2841

_____

[15] In light of the Court's conclusions above, it need not reach Defendant Weber's judicial estoppel argument.

P.O. Box 1000
Houtzdale, PA  16698-1000
*Via First Class, U.S. Mail*

Counsel of Record
*Via Electronic Mail*